IRVING, J.,
DISSENTING:
¶ 20. After the jury began its deliberations, it asked to view the videotape which had been made by the arresting officer of the events surrounding Bates’s arrest. The majority finds that the trial court did not err in its submission of the videotape to the jury for viewing. I disagree; therefore, I respectfully dissent.
¶ 21. I believe the process utilized by the trial court to accommodate the jury’s request was problematic and requires that this case be reversed for a new trial because the process undermined the fundamental principle that once a jury begins deliberations, no one other than the twelve jurors should be allowed in the jury room during its deliberations. The jury’s request to view the videotape presented a logistic problem for the court. During the course of the trial, the jury had been allowed to hear and see only a portion of the videotape because it contained other matters that were irrelevant and prejudicial to the charges on which Bates was being tried. Showing the jury only a portion of the tape during the trial did not, however, present a problem because the prosecutor simply stopped the playing of the videotape when it got to the part that was not being admitted into evidence. The tape was never redacted.
¶ 22. When the jury requested to view the tape again to assist in its deliberations, *11 the trial court was not able to simply send the tape in because, as stated, the tape contained prejudicial information that had not been admitted into evidence. To cure this problem, the trial court instructed the prosecutor to play the videotape for the court outside the presence of the jury and to inform the court of the point where the viewing by the jury should end. This was done. However, Bates contends that the point where the prosecutor indicated was not the same spot as the one where the tape had been stopped when a portion of the tape was admitted into evidence during the course of the trial. Nevertheless, the trial court agreed that the videotape would be played until it reached this point. But again, the videotape was not redacted and given to the jury. Instead, the court decided, over Bates’s objection, that the videotape should be shown to the jury with the assistance of the bailiff. The bailiff was instructed where to begin and end the playing of the videotape. Apparently, the videotape was then given to the bailiff to be played for the jury in the jury room.
¶ 23. As noted earlier, Bates argues that the portion of the tape which the trial judge authorized to be played to the jury during jury deliberations was not the same portion which had been admitted into evidence during the presentation of the trial evidence. Additionally, he argues that the jury even may have seen additional unauthorized and un-admitted portions of the tape. However, while arguing strenuously that the jury was allowed to view extraneous material, Bates presented no evidence to prove the alleged discrepancies between the starting and stopping points of the two separate showings of the videotape. The State presented affidavits from two members of the jury attesting that the jury did not listen to or view the videotape beyond the point authorized by the court. Bates counters the State’s response with the argument that the affidavits from the two jurors were improper and insufficient to ascertain what actually happened with the viewing of the videotape. Bates further argues that the trial court should have conducted a full hearing and that all members of the jury should have been queried.
¶ 24. The majority finds that, since Bates failed to present evidence to substantiate his claim of extraneous matter being considered by the jury, the trial court did not err in allowing the videotape to be played.
¶ 25. I agree with the majority that Bates failed to present evidence to substantiate his claim that extraneous materials were considered by the jury. However, I do not believe our analysis should end there. I believe we should notice as plain error the fact that the bailiff was allowed in the jury room during deliberations. Not only was the bailiff allowed in the jury room, he was specifically sent in by the trial judge to assist in the presentation of evidence to the jury. I can find no justification or authority for such procedure. It matters not that, at that point, there was an absence of equipment to perform the redaction. The videotape was the State’s exhibit, and the State should have been prepared for this contingency.
¶ 26. Bates argued, as an alternative, that, since there was no equipment to perform the redaction, the jury should have been returned to the courtroom and the tape played, as it had been done during the trial, with all parties present. While this procedure was not appropriate either, it was at least a better alternative than the one selected by the trial judge.
¶ 27. I do not mean to suggest that the bailiff himself did anything inappropriate in the jury room. I am merely voicing my disapproval of the procedure chosen by the trial judge and its impact on the fundamental principle of criminal law that once *12 a jury begins its deliberations, no one should be permitted to participate with it in the review or consideration of the evidence which has been presented during the course of the trial.
¶ 28. For the reasons presented, I respectfully dissent. I would remand for a new trial.